May it please the Court, Counsel. My name is Jason Holden, and I represent the appellant Geoffrey Peter Schardien. If I could reserve two minutes for rebuttal. Mr. Schardien raises two issues on appeal and begins this morning by focusing on the District Court's abuse of discretion in denying his motion for a mistrial when the government asked improper questions that left the false impression that it possessed telephone recordings that implicated Mr. Schardien in the cocaine conspiracy charged. That evidence simply did not exist, and it was improper for the government to suggest that it did. The government concedes on appeal that a mistake was made. An honest mistake or not, there is no doubt that those questions asked of the final government witness, Agent Donato, materially affected the fairness of Mr. Schardien's trial. Well, the judge made a quick to respond. The judge did make an instruction quickly, Your Honor. However — How did the jury disregard that? What he told the jury was to disregard both the question and the objection. And the United States cites to the case of — But he said put it out of your mind if that's possible. Well, he said to forget it and not to consider it. I believe he said forget the question and the objection. Both should be disregarded in reaching your verdict in this case. But as the United States cites to the Fourth Circuit case of the United States v. Hall, what's remarkable about what the district judge did in that case was he corrected the false impression. Here, the district judge did not correct the false impression that the actual recordings did not exist. He said just disregard it. And that's like telling someone to disregard the car crash that they just drove by. Did trial counsel ask the Court to do what you suggested the Court should have done? No, Your Honor. I was trial counsel. And I immediately made the objection. And my objection was actually very specific, Your Honor. I objected both under 403 and 404. And I also stated that it was a complete misrepresentation that that question implicated the conspiracy. Remember what the question related to. It related to a jail telephone recording between my client and his girlfriend, Jennifer Terry. She was not a co-conspirator, was never suggested to be a conspirator in the case. And the question asked of Agent Donato sought to suggest that the government  And that evidence just simply did not exist. And so when the district court failed to correct that false impression, we believe Mr. Chardin asserts that it abused its discretion. The ultimate inquiry is whether or not it materially affected the outcome in this case. Why does it matter? Well, part of that, you have to ask whether it permeated the whole trial, whether it was such a strong, you know, such a significant event. Yes, Your Honor. I believe it did. And for this reason, remember that Mr. Chardin was charged with three counts. And he was charged with conspiracy to possess with intent to distribute over 5,000 grams of cocaine, possession with intent to distribute over 5,000 grams of cocaine, and actual distribution of 5,000 grams of cocaine. The jury fundamentally rejected the government's theory of the case in this respect. It found Mr. Chardin guilty of count one, but as is very important in all drug cases, the weight was only over 500 grams, but less than 5,000 grams. But let's take a look at what the jury reached on counts two and three. It actually found Mr. Chardin guilty of actual possession and actual distribution of cocaine less than 500 grams, which would have meant that Mr. Chardin would have beat the five-year mandatory minimum. He, of course, was able to successfully defeat the 10-year mandatory minimum. And remember that the cocaine conspiracy was directly related to Victor Nava. Victor Nava was the key government witness. And there was some evidence suggested by the government in Exhibits A and B with a number of telephone calls. They were just poll records, essentially showing that there was a phone call from, you know, phone call A to phone call B or phone number A to B. And that was the only evidence that they tied Mr. Chardin to Noel Herrera, who has never been prosecuted nor never arrested and wasn't at trial. But Victor Nava was the key witness here. And to suggest that there was some type of telephone recording was just so prejudicial that the telephone recording with the girlfriend about manipulating, manipulation. Yes. But the setup of the question was, was there a telephone recording that tied Mr. Chardin into the conspiracy? That's the first part. That was fundamentally not accurate. The second part was really a question of interpretation. Certainly, Mr. Chardin suggests that he wasn't talking about manipulating the jury on that jail telephone recording. He uses some foul language and basically says, my lawyer's got to do a better job than the government's lawyer, and, you know, human beings are the most easy to manipulate on the planet. To suggest that he was talking to a co-conspirator about manipulating the jury, I think — Well, the judge looked at all of it, looked at the questions and whatnot. I mean, the judge obviously agreed that the government's interpretation was not accurate. Well, I don't — no, I don't think so, because the judge told the jury to disregard the question. But he denied the motion for mistrial. And the question that this Court has to answer is whether or not that question alone materially altered the case or materially affected the fairness of the trial. So is it your view that nothing could have cured the prejudice? Yes. That's Mr. Chardin's view. Well, that's not entirely accurate. That's not entirely accurate. I'm sorry. That's not entirely accurate. I think probably an instruction more similar to Hall could have been given. But if that's the case, isn't it incumbent on defense counsel to say to the judge, I need this expanded instruction? Well, when would you do that, Your Honor? The judge came in after argument. When I — when I made the objection, I made my record for the mistrial, and the judge came in and instructed the jury. Now — He took a break. He took a break. He did. Right. But isn't that when you would say to the clerk, since there's a break at this point, we want to consult, I have a proposal? I mean, it — Well, I think that I — You know, I mean, it's — I know that it's a fluid thing when you're in trial, and everything doesn't, you know, in retrospect, it doesn't always look quite so orderly. But it's — we're kind of hard-pressed here in the court of appeals when someone says, well, I'm not saying that nothing would have cured it, but a different instruction would have cured it. And so he gives an instruction, but it's not the perfect one. But nobody says to him, it's not the perfect one. Well, the only time I had an opportunity to correct it would have been after he gave the instruction. I made the objection that was appropriate. I said it's a complete misrepresentation as to whether or not that — whether or not that phone call implicated Mr. Shardeen into the conspiracy. Then I made the record on the motion for mistrial, and I told the judge, listen to the recordings. He took a break. He considered it. I wasn't going to interrupt him at that time. He came in, gave the instruction to the jury. I wouldn't, at that point, object to the judge's own instruction and say, Judge, you got it wrong. You got it wrong. And then defense counsel is at the crossroads of, do I have the judge go back and tell the jury about the car wreck they just saw and remind them of it again, or do I — am I sufficient in the record that I created? And I believe that I was sufficient in the record I created because my objection completely said that's a mischaracterization as to the representation regarding the distortions. I understand the — I understand the tactical decision, and I'm not suggesting it was necessarily wrong. But then when you get here, we have the general rule that the jury will hear and listen to and follow that instruction, whatever it may be. Well, and I thought about that, Your Honor, but I don't think that general rule certainly trumps the idea that it's more probable than not that that question materially affected the fairness of trial. And what do you have objectively to look at in this case? The jury — You might want to notice your time there. Yeah, I did. I thought it was worth it. Okay. Materially affected the trial. You have the jury verdict. You have the jury verdict. And the jury verdict clearly shows that Mr. Shargeen beat the government's case as it relates to the weight of the evidence. And take a look at the jury verdict on the distribution and the possession counts. One could say that result reflects the jury's sort of distrust of Nava, the cooperating witness. It does. And this question went to that. This question went to the heart of the conspiracy count to suggest that there were some recordings. I don't want to lose sight of Larson. I do believe that Mr. Nava should have been — I should have been able to ask Mr. Nava about his mandatory minimum sentence. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. I'm Vince Carroll. I represent the government. And I was also trial counsel in this matter in the district court. The district court did not abuse its discretion with regard to the first issue that the defendant raises, in that he did not abuse his discretion in limiting the cross-examination of Mr. Nava. And even if there was some error in limiting that cross-examination, that error is harmless, as set out in the government's brief. And given the fact that the defendant did not, or Mr. Holden didn't address that issue, I'll also focus my arguments on the second issue, the prosecutorial misconduct claim. The problem with the defendant's position at this point, as the Court's questions have — based on the Court's questioning of Mr. Holden, is that he's arguing now that what the district court did was insufficient to cure the error that was caused by the government's question in the circumstances at the district court. But he — he did not bring that issue to the trial courts. He didn't suggest what the trial court should do to cure that error. And so he's left now to argue that nothing basically would cure that error, except for, you know, maybe more specifically addressing or instructing the jury. But the problem again would be that he did not bring that issue to the — he did not make that suggestion to the trial court. And another problem with that is that, for all we know in the record, the trial court didn't want to shine any more light on this issue. Once the trial court took a break and had a chance to look at the record and made its determination that the question — that the door was not open, that it was improper for the government to ask that question at that particular time in the trial, the trial court instructed the jury and moved on. From that, I take that the trial court didn't want to shine any more light on this, which would have created a bigger problem, I think, in the jurors' minds, cementing the fact of what happened, the question and the objection. So the trial court, I think, was — handled this matter the way it should. It sustained the defendant's objection. It instructed the jury not to consider the question or the objection, and asked — instructed the jury not to consider that in their deliberations. And later in the trial, the trial court instructed the jury twice that arguments by counsel or questions by counsel is not evidence in the case, and they can't use that as evidence. Sotomayor, I used to crack up because there's always a fiction to tell the jury. What you just heard, forget it. Put it out of your mind. It just kind of centers in on, wow, what did he say? Maybe I should think about that. But then we presume that juries follow their instructions. I realize that. And maybe they can't put it out of their minds, but the — Well, would you agree that this might be kind of a horse of a different color, because a lot of times there's testimony about a witness or what he said or whatever, and they say, stop, don't consider that. But this is a little bit different in its nature because there's a suggestion that there's going to be tampering with them, the people who are the decision makers. And that — that is something that would make them sit up and listen carefully, that might be a little different than just saying disregard that piece of evidence. So don't you think it makes a difference in how we analyze it? I don't think it makes a difference in how the court analyzes it. And I think that is exactly why what the district court did in this situation was proper. For him to have followed Mr. Holden's suggestion that he's suggesting now would further bring that information to the jurors' minds, to focus the light on what was said and what the objection was. The trial court took a break and then promptly instructed the jury to disregard the question and the objection and to move on. And that's exactly what was done. And this was — this took place, albeit at the end of the trial, it was a two-day trial, and there were lots of information and evidence that was presented. And I don't know that if the trial court would have taken Mr. Holden's suggestion and gone into more specifics, I think it would have even been harder for them to, as the Court's question points out, even harder for them to put that out of their mind and not to consider it. And so I think what the trial court did was appropriate, and even if the Court finds that it wasn't appropriate, that this — that there was some error in not granting the mistrial or a new trial, any error would be harmless based on the — on the other evidence presented at trial of this defendant's guilt. And unless the Court has any specific questions, I don't intend to address the first issue, given the — Mr. Holden's not making any argument on that particular issue. Ginsburg. He didn't just brief. Yes, Your Honor, and I would rely on the government's response in our brief, unless the Court has any specific questions. Thank you. Thank you. Mr. Holden, why don't you put a minute back on the clock? Thank you, Your Honors. The question really comes down to did the improper question, mistaken question materially affect the outcome of trial? It isn't whether or not what I'm suggesting now or what I — what I objected to at the time of trial. The question for this Court, taking a look at the record, is that the type of evidence that materially affected the fairness of Mr. Chardin's trial? And to suggest that evidence did exist, which in fact did not exist, is the exact type of question that this Court can rule that a district court abused its discretion and reversed and remanded for a new trial. And the reason why it matters is because of the jury verdict itself. Mr. Chardin not only beat the government's case in terms of the 10-year mandatory minimum, but the counts as it relates to the possession and actual distribution show that that question and that evidence materially affected the outcome. Thank you, Your Honors. Thank you. I'd like to thank both counsel for your briefing and argument. And the case of United States v. Chardin is submitted.
judges: Alarcon, McKeown, Paez